IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOAQUIN PACHECO TUM,

    Petitioner,

       v.                          Civil Action No. 3:26cv153

PAUL G. PERRY, *et al.*,

    Respondents.

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Joaquin Pacheco Tum's ("Petitioner")

Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition"). (ECF No. 1.) In

the Petition, Mr. Pacheco Tum challenges his detention by Immigration and Customs

Enforcement ("ICE"), arguing that ICE's failure to provide him with a bond hearing under

8 U.S.C. § 1226 violates his statutory right to such a hearing and his constitutional right to due

process under the Fifth Amendment to the United States Constitution. (ECF No. 1 ¶¶ 64–73.)

For the reasons articulated below, the Court will grant the Petition. (ECF No. 1.) The

Court will order Respondents to provide Mr. Pacheco Tum with a bond hearing under 8 U.S.C.

§ 1226(a).

### I.  Factual and Procedural Background

#### A.    Factual Background[1]

Mr. Pacheco Tum is a member "of the indigenous K'iche' population of Guatemala."

(ECF No. 1 ¶ 37.) His native language is Quiche. (ECF No. 1 ¶¶ 37, 39.) He entered the United

---

[1] As discussed below, the Court proceeds by dispelling with additional briefing and
incorporating Respondents' filings in this Court's decision in *Duarte Escobar v. Perry, et al.*,

States "without inspection" a number of years ago, and he has resided in the United States continuously since his entry.[2] (ECF No. 1 ¶ 35.) Mr. Pacheco Tum has two children who are United States citizens. (ECF No. 1 ¶ 38.)

On January 6, 2013, Mr. Pacheco Tum was "put into removal proceedings pursuant to a Notice to Appear."[3] (ECF No. 1 ¶ 36; ECF No. 1-3, at 2–3.) His immigration record reflects numerous hearings in Immigration Court. He appeared for all of his scheduled hearings. (ECF No. 1 ¶ 36.) Mr. Pacheco Tum has a pending "[a]pplication for asylum, [w]ithholding [of removal,] and [p]rotection under the Convention Against Torture." (ECF No. 1 ¶ 38.)

On January 6, 2026, Mr. Pacheco Tum missed a scheduled check-in with ICE. (ECF No. 1 ¶ 39.) Upon realizing he "confused his check in date," he reported to the ICE Washington Field Office in Chantilly, Virginia on January 27, 2026, where he was detained by ICE. (ECF No. 1 ¶ 39.) He is now in custody at the Caroline Detention Center. (ECF No. 1 ¶ 39.)

Petitioner argues that his current detention is unlawful because it "exceeds the government's statutory authority under" the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). (ECF No. 1, at 19.) Mr. Pacheco Tum seeks

---

3:25-cv-758 (MHL) (E.D. Va. 2025). Respondents have recently represented to the Court that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in *Duarte Escobar*." (ECF No. 4, at 1.) Accordingly, the Court's recitation of the factual background relies on the facts as alleged in the Petition.

[2] The Petition inconsistently indicates the number of years Mr. Pacheco Tum has resided in the United States, ranging from "almost 10 years," (ECF No. 1 ¶ 12), to "21 years," (ECF No. 1 ¶ 62), to "over 24 years," (ECF No. 1 ¶¶ 23, 35). Regardless of whether Mr. Pacheco Tum has resided in the United States for 10, 21, or 24 years, he has lived in the country for a significant period of time.

[3] A Notice to Appear is a "'[c]harging document' that 'initiates a proceeding before an Immigration Judge.'" *Hasan v. Crawford*, 800 F. Supp. 3d 641, 648 n.3 (E.D. Va. 2025) (quoting 8 C.F.R. § 1003.13).

release from custody or a Court order requiring the Immigration Court to hold a bond hearing. (ECF No. 1 ¶ 67.)[4]

### B.   Procedural Background

On February 25, 2026, Mr. Pacheco Tum filed the instant Petition. (ECF No. 1.) On February 27, 2026, the Court ordered Respondents to file a notice indicating whether the factual and legal issues presented in the Petition differ in any material fashion from those presented in *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025). (ECF No. 3.) The Court further ordered that, if Respondents indicated that the factual and legal issues presented in the Petition do not differ in any material fashion from those presented in *Duarte Escobar*, "each of the substantive filings in [*Duarte Escobar* would] be incorporated into this habeas proceeding, and this Court [would] issue a ruling without further filings from the parties." (ECF No. 3, at 1–2.)

On March 4, 2026, Respondents filed a Notice in response to the Court's February 27, 2026 Order. (ECF No. 4.) In the Notice, Respondents "submit that the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in *Duarte Escobar*[.]" (ECF No. 4, at 1.) "[C]onsistent with [the Court's] recent order," Respondents contend that "this Court should incorporate the filings in *Duarte Escobar* into the record of this habeas action." (ECF No. 4, at 1.)

---

[4] On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado*. "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, 807 F. Supp. 3d 397, 401 (D.N.J. 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

The Court therefore incorporates the parties' merits briefing in *Duarte Escobar* into the record. *See Duarte Escobar*, No. 3:25-cv-758 (MHL), ECF Nos. 16, 18, 19, 20 (E.D. Va. 2025). The Court also dispels with any further briefing by the parties.

## II. Standard of Review

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. Analysis

The central question posed in Mr. Pacheco Tum's Petition is whether he is entitled to a discretionary bond hearing under 8 U.S.C. § 1226(a)[5] or whether he is subject to the mandatory

---

[5] 8 U.S.C. § 1226 provides, in relevant part:

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole.

detention provision of 8 U.S.C. § 1225(b)(2)(A).[6] Petitioner contends that 8 U.S.C. § 1226 entitles him to a bond hearing. Specifically, Mr. Pacheco Tum argues that (1) the discretionary detention provisions of 8 U.S.C. § 1226(a) entitle him to a bond hearing, (ECF No. 1 ¶¶ 68–73); and (2) that his Fifth Amendment due process rights bolster his entitlement to such a hearing, (ECF No. 1 ¶¶ 64–67).

In opposition, Respondents rely on their arguments incorporated by this Court from *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025).[7] Here, as in *Duarte Escobar*,

---

8 U.S.C. § 1226(a)(1)–(2).

[6] 8 U.S.C. § 1225 provides, in pertinent part:

(b) Inspection of applicants for admission

    (2) Inspection of other aliens

        (A) In general

        Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

[7] Respondents' arguments have also been raised and decided throughout the country. The vast majority of courts addressing this issue have concluded that 8 U.S.C. § 1226(a) pertains, meaning petitioners like Mr. Pacheco Tum should receive a bond hearing. *See Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *4–5 (E.D. Pa. Nov. 18, 2025) (noting that "of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here").

In addition, dozens of courts in the Eastern District of Virginia (including this Court) have rejected Respondents' position on eminently sound bases. *See Velasquez v. Noem*, No. 3:25-cv-998 (MHL), 2026 WL 279226, at *4 n.14 (E.D. Va. Feb. 3, 2026) (collecting thirty cases rejecting Respondents' argument in this District alone).

5

Respondents insist (1) that the Court lacks jurisdiction over the Petition by virtue of two jurisdiction-stripping provisions of the Immigration and Nationality Act ("INA"), (*Duarte Escobar*, ECF No. 18, at 7–8); (2) that even if the Court has jurisdiction over the Petition, Mr. Pacheco Tum's detention is lawful under 8 U.S.C. § 1225's mandatory detention provisions, (*Duarte Escobar*, ECF No. 18, at 8–20); and (3) that Mr. Pacheco Tum's constitutional due process rights have not been violated, (*Duarte Escobar*, ECF No. 18, at 20–28).[8]

The parties' arguments as to all challenges raised are substantially similar to others made in recent § 2241 habeas actions in the Eastern District of Virginia, including many cases decided by this Court. *See, e.g., Duarte Escobar*, 807 F. Supp. 3d 564; *Perez-Gomez v. Warden*, 3:25-cv-773 (MHL), 2025 WL 3141103 (E.D. Va. Nov. 10, 2025) (rejecting the same arguments made in *Duarte Escobar*); *Contreras-Perez v. Noem*, No. 3:25-cv-882 (MHL), 2025 WL 3281774 (E.D. Va. Nov. 25, 2025) (same); *Campos Flores v. Bondi*, No. 3:25-cv-797 (MHL), 2025 WL

---

A small minority of district courts have accepted Respondents' arguments. *See, e.g., Chavez v. Noem*, 801 F. Supp. 3d 1133, 1140–41 (S.D. Cal. 2025); *Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132, 1140–43 (D. Neb. 2025). These decisions do not alter this Court's determination.

Recently, the United States Court of Appeals for the Fifth Circuit joined these courts. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). The Fifth Circuit's decision is not binding here. *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 260 (4th Cir. 2020). Moreover, the Court is unpersuaded by the Fifth Circuit majority's reasoning for many of the reasons cogently set forth in Judge Douglas' dissent, which explains that the majority's interpretation risks rendering substantial portions of the statutory scheme superfluous and internally inconsistent.

[8] Respondents, in their arguments as incorporated from *Duarte Escobar*, do not argue that Mr. Pacheco Tum has failed to exhaust his administrative remedies, and they therefore waive any argument on this point. The Court notes, however, that even had Respondents raised an exhaustion defense, they would not prevail, because exhausting Mr. Pacheco Tum's administrative remedies prior to filing his Petition would be futile. *See Duarte Escobar*, 807 F. Supp. 3d at 572.

3461551 (E.D. Va. Dec. 2, 2025) (same); *Velasquez v. Noem*, No. 3:26-cv-998 (MHL), 2026 WL 279226 (E.D. Va. Feb. 3, 2026) (same); *Espinoza Camacho v. Perry*, No. 3:26-cv-76 (MHL), 2026 WL 414937 (E.D. Va. Feb. 15, 2026) (same); *Lopez-Diaz v. Crawford*, No. 3:25-cv-1039 (MHL), 2026 WL 625492 (E.D. Va. Mar. 6, 2026) (same).  Respondents raise no new arguments that would compel a different outcome.

The Court concludes that 8 U.S.C. § 1226(a) and the Fifth Amendment entitle Mr. Pacheco Tum to a bond hearing.  Accordingly, the Court will grant the Petition.

## A.    The Court Has Jurisdiction Over the Petition

As a threshold matter, this Court has jurisdiction to consider Mr. Pacheco Tum's Petition. Respondents argue that the Court lacks subject-matter jurisdiction over the Petition because two provisions of the INA strip the Court of jurisdiction over the Petition:  8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g).  (*Duarte Escobar*, ECF No. 18, at 7–8.)

As this Court held in *Duarte Escobar*, neither 8 U.S.C. §§ 1252(b)(9)[9] nor 1252(g)[10] divests this Court of jurisdiction under 28 U.S.C. § 2241 to review Mr. Pacheco Tum's Petition. *Duarte Escobar*, 807 F. Supp. 3d at 572–75; *see also Luna Quispe*, 2025 WL 2783799, at *2–3. The Court has jurisdiction to consider the merits of the Petition and proceeds to the substance of Mr. Pacheco Tum's claim.

---

[9] For instance, 8 U.S.C. § 1252(b)(9) does not divest this Court of its habeas jurisdiction because Mr. Pacheco Tum does not seek review of a removal order.  *Duarte Escobar*, 807 F. Supp. 3d at 573–74 (citing *Jennings v. Rodriguez*, 583 U.S. 294–95 (2018) (plurality opinion)).

[10] 8 U.S.C. § 1252(g) likewise does not divest the Court of its habeas jurisdiction because this case does not involve commencement, adjudication, or execution of any immigration order. *Duarte Escobar*, 807 F. Supp. 3d at 574–75 ("[Section] 1252(g) does not apply 'to *all* claims arising from deportation proceedings.'" (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis added))).

**B.      Mr. Pacheco Tum is Entitled to a Bond Hearing Pursuant to 8 U.S.C. § 1226**

With respect to the substance of Petitioner's claim, Mr. Pacheco Tum argues that his detention is governed by the discretionary detention provisions of § 1226 rather than the mandatory detention provisions in § 1225(b)(2). (ECF No. 6 ¶¶ 59–63.) According to Respondents, Mr. Pacheco Tum's detention is lawful under the INA because Mr. Pacheco Tum was not legally granted entry into the country and is therefore an "applicant for admission," meaning § 1225(b)(2) governs his detention. (*Duarte Escobar*, ECF No. 18, at 8–20.)

For the reasons stated by this Court in *Duarte Escobar*, as well as the dozens of other decisions issued by courts in this District on the same issue, this Court concludes that Petitioner's detention is governed by 8 U.S.C. § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures. 807 F. Supp. 2d at 575–81. This argument fails.

Mr. Pacheco Tum has been present in the United States for at least ten years. (*See* ECF No. 1 ¶¶ 12, 23, 35, 62.) He is thus not an "applicant for admission" subject to the mandatory detention provisions of § 1225 but rather falls within the discretionary detention provisions of § 1226(a) governing aliens who are already in the country. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–90, 303 (2018) (finding that § 1226(a) is the "default rule" governing "aliens already in the country" whereas § 1225 governs "aliens seeking admission into the country").[11] For the

---

[11] The Court observes that, for decades, "Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 n.6 (BIA 2025). But on July 8, 2025, "Acting Director of U.S. Immigration and Customs Enforcement, Todd M. Lyons, issued an internal memorandum explaining that the agency had 'revisited its legal position'" by determining that "[the mandatory detention provisions of section 1225] of the Immigration and Nationality Act (INA), rather than [the discretionary detention provisions of section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde*, 792 F. Supp. 3d. 211, 217–18 (D. Mass. 2025). The July memorandum characterized, seemingly for the first time, all noncitizens who entered the United States without inspection as doing so "seeking admission," no matter

8

reasons set out in *Duarte Escobar*, the plain text of the INA,[12] Supreme Court precedent, district court decisions around the country, and decades of practice support this conclusion.  807 F. Supp. 3d at 575–81.  Petitioner is therefore entitled to a bond hearing under § 1226(a) and its implementing regulations.

---

how much time passed between their entrance into the United States and their apprehension by law enforcement.

On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado* in line with Acting Director Lyons' memorandum.  "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)."  *Soto v. Soto*, 807 F. Supp. 3d 397, 401 (D.N.J. Oct. 22, 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

The Court owes the BIA no deference in its interpretation of the INA and interprets §§ 1225 and 1226 *de novo*.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395–96 (2024).  Indeed, the United States District Court for the Central District of California recently issued a nationwide declaratory judgment and vacatur under the Administrative Procedure Act against ICE's internal policy mandating that immigration detainees remain detained without a bond hearing.  *Bautista v. Santacruz*, —F. Supp. 3d—, 2025 WL 3713987 (C.D. Cal. 2025).  In doing so, the *Bautista* court found that *Matter of Yajure Hurtado* cannot be *controlling* law because it relies on a faulty statutory analysis, which *Bautista* rejected.  *Id.* at *12; *see also Duarte Escobar*, 807 F. Supp. 3d at 580.  The same is true here.

[12] As this Court explained in *Duarte Escobar*, § 1225 requires that an applicant be "seeking admission" to the United States.  8 U.S.C. § 1225(b)(2).  The statute's use of active language suggests that an alien must be taking *active* steps towards "seeking admission" to the United States.  Presence in the country is not enough.  *Duarte Escobar*, 807 F. Supp. 3d at 576.  To find otherwise, as Respondents (again) ask this Court to do, would render other provisions of the INA superfluous.  *Id.* at *9–10.

9

### C.    Mr. Pacheco Tum's Fifth Amendment Due Process Rights Have Been Violated

Finally, Petitioner argues that his detention without a bond hearing violates his due process rights under the Fifth Amendment's Due Process Clause. [13]  (ECF No. 1 ¶¶ 64–67.) Respondents contend that Petitioner's due process rights are governed only by the INA, rather than the Fifth Amendment's Due Process Clause, and that even if Petitioner is subject to the Fifth Amendment's Due Process protections, denying him a bond hearing does not violate his constitutional rights.

For the reasons articulated in *Duarte Escobar*, the Court finds that Mr. Pacheco Tum's due process rights are governed by the Fifth Amendment and that his continued detention under 8 U.S.C. § 1225 without a bond hearing violates his due process rights.  807 F. Supp. 3d at 581– 84.  Specifically, the Court finds that all three *Mathews* factors weigh in Mr. Pacheco Tum's favor:  (1) he has a strong private interest in remaining free from physical detention; (2) there is a significant risk of erroneous deprivation of his due process rights because he is entitled to a bond hearing under § 1226(a) that he has not received; and, (3) respondents have failed to demonstrate a compelling government interest in detaining Petitioner without a bond hearing.  *See Duarte Escobar*, 807 F. Supp. 3d at 581–84 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

---

[13]  The Fifth Amendment to the United States Constitution provides, in pertinent part:

> No person shall . . . be deprived of life, liberty or property without due process of law.

U.S. Const. amend. V.

**D.     The Proper Remedy for this Violation is to Provide Mr. Pacheco Tum with a <u>Bond Hearing During Which Respondents Maintain the Burden of Proof</u>**

Mr. Pacheco Tum argues that "immediate release is the most appropriate relief" in this case because "filing a bond application would be futile." (ECF No. 1 ¶ 53.) Mr. Pacheco Tum explains that Respondents' "new immigration policy has made it so that bonds are consistently denied by immigration judges . . . solely by a finding of flight risk" without an assessment of a person's "individualized circumstances" such that granting relief in the form of a bond hearing "function[s] the same as being held under § 1225(b)(2)." (ECF No. 1 ¶¶ 54–57.)

In their response as incorporated from the briefing in *Duarte Escobar*, Respondents assert that a bond hearing is the only appropriate remedy and that at a bond hearing, and that Mr. Pacheco Tum should bear the burden of establishing whether he is a flight risk or a poses a risk danger. (*Duarte Escobar*, ECF No. 18, at 28–29.)

For three reasons, the Court will order Respondents to provide Mr. Pacheco Tum with a bond hearing rather than immediate release. But the Court will require Respondents to bear the burden of proof at that bond hearing.

First, ordering a bond hearing allows the Court to tailor its remedy to the specific injury alleged by Mr. Pacheco Tum: deprivation of his access to a bond hearing. *Avelar Ramos v. Bondi*, No. 3:26-cv-112 (MHL), 2026 WL 614875, at *5 (E.D. Va. Mar. 4, 2026). Second, providing Mr. Pacheco Tum with a bond hearing aligns with the INA's statutory scheme, through which Congress and DHS, in enacting § 1226 and promulgating its implementing regulations, "have determined that an Immigration Judge is best situated to make a determination about whether an alien is a potential danger to the community or is a flight risk." *Id.* at *6. And third, the circumstances in which district courts within the jurisdiction of the United States Court of Appeals for the Fourth Circuit have ordered immediate release instead of a bond hearing are

not present here. *Id.* For example, this Court has neither been "confronted with petitioners who have been detained, released, and re-detained by immigration officials," nor with evidence of Respondents' failure to comply with this Court's orders. *See id.* The Court will therefore order Respondents to provide Petitioner with a bond hearing rather than order his immediate release.

The Court will require Respondents to carry the burden of proof at that bond hearing. As this Court explained in *Avelar Ramos*, given Respondents' "abject denial of [Mr. Pacheco Tum's] entitlement to a bond hearing, due process calls for additional safeguards to protect that entitlement." 2026 WL 614875, at *7–8.[14]

Accordingly, the Court will order Respondents to provide Petitioner with a bond hearing during which Respondents will bear the burden of showing whether Mr. Pacheco Tum is a danger or a flight risk by clear and convincing evidence.

### IV.  Conclusion

Because § 1226(a) sets for "the default rule" for detaining and removing aliens "already present in the United States," *Jennings*, 583 U.S. at 202, Petitioner's detention is governed by § 1226(a).  Under § 1226(a) and its implementing regulations, he is entitled to a bond hearing

---

[14] In *Avelar Ramos v. Bondi*, this Court distinguished circumstances like the present—where a noncitizen petitioner detained under § 1226 was denied a bond hearing—from those addressed in the Fourth Circuit's decision in *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022). *Avelar Ramos*, 2026 WL 614875, at *7–8.  As this Court explained, the *Miranda* court held that placing the burden of proof on a noncitizen to prove that he or she was not a risk of danger or a risk of flight did not violate due process because the noncitizen was afforded *three opportunities* to seek release from detention. *Id.* (citing *Miranda*, 34 F.4th at 358–65).

The present situation, as in *Avelar Ramos*, differs from that at issue in *Miranda* because Mr. Pacheco Tum "has been denied access to a bond hearing entirely." *Id.*; *see also Pineda-Medrano v. Bondi*, No. 1:25-cv-01870 (AJT), 2025 WL 3472152, at *3 n.5 (E.D. Va. Dec. 3, 2025) ("[N]owhere in [*Miranda*] did the Fourth Circuit hold—explicitly or implicitly—that the failure to comport with the procedures contemplated in section 1226(a), including the provision of a bond determination hearing, would also satisfy due process.").

12

before an Immigration Judge at which the government must prove by clear and convincing evidence that he poses a danger to the community or that he is a flight risk if Respondents seek to continue detaining Mr. Pacheco Tum. 8 U.S.C. § 1226(a); *Avelar Ramos*, 2026 WL 614875, at *7–8.[15] Unless and until Respondents meet that burden, Mr. Pacheco Tum's continued detention is unlawful.

For the reasons articulated above, the Court will grant Mr. Pacheco Tum's Petition, (ECF No. 1), and order that he be provided a bond hearing with an Immigration Judge pursuant to 8 U.S.C. § 1226(a).

An appropriate Order shall issue.

Date: 3/13/2026
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge

---

[15] 8 C.F.R. § 1236.1(d)(1) provides, in relevant part:

> After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority [under § 1226] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter.

8 C.F.R. § 1236.1(d)(1).

13